TEXAS & PACIFIC RAILWAY COMPANY v. E. G. TAYLOR.

Decided March 13, 1909.

**1.—Railroads—Failure to Furnish Cars—Statute—Cases Followed.**

Articles 4497 to 4502, of the Revised Statutes, as amended by the Act of 1899, authorizing the recovery of penalties against railroad companies for failure to furnish cars upon demand, are not subject to the objections:

(1) That said articles are contrary to the 14th amendment to the Constitution of the United States in that they make no provisions for exempting the carrier from damages resulting from circumstances beyond its control, and hence authorize the taking of property without due process of law. Allen v. Texas & P. Ry. Co., 100 Texas, 525 followed.

(2) That article 4502 is void for uncertainty in the requirement that the shipper must "have on hand at the time any demand for cars is made" the necessary freight with which to load them. The expression "have on hand" must be held to mean that the person making the demand is the owner or manager of such freight and has such possession of it or control over it as that he can and will be ready and able to load the cars so ordered within the time given him by the statue.

**2.—Same—Statute Construed.**

By the terms of article 4499, Rev. Stats. as amended by the Act of 1899, fixing a penalty against railroads for failure to furnish cars, at "the sum of $25. per day for each day failed to be furnished," is meant that the penalty is to be inflicted at the rate of $25. per day for each car and to be continued for the whole time of the carrier's delinquency.

**3.—Same—Penal Statutes—Construction.**

Articles 4497 to 4502, Rev. Statutes are highly penal in their nature, and the rule of strict construction should be applied to them, but it should not be so applied as to destroy the intention of the law-makers, that intention being manifest.

**4.—Same—Owner—Parties to Suit.**

One of two joint owners of live stock may sue alone for the statutory penalty for failure to furnish cars when he had the actual custody and control of the property and made the demand for cars and shipped the stock in his own name.

**5.—Railroads—Intrastate Shipment.**

A contract for the transportation of freight from a point in this State to a point upon the border of the Republic of Mexico is not an international shipment, and this, though the shipper intended to and did in fact have the freight shipped from its first destination to a point in said Republic. Hence, under the first contract of shipment the railroad company was subject to the statutes of this State imposing a penalty for failure to furnish cars.

**6.—Same—Penalty—Computation of Time.**

In computing the time for which a railroad company is liable for the statutory penalty for failure to furnish cars after demand duly made, the day on which the cars were to be furnished and the day on which they were actually furnished should be excluded from the computation.

Appeal from the District Court of Mitchell County. Tried below before Hon. Jas. L. Shepherd.

*Edw. Smith* and *Wagstaff & Davidson,* for appellant.—The court erred in refusing to give special charge No. 1 of the defendant wherein

defendant requested a peremptory instruction in its favor. Texas & P. Ry. Co. v. Allen, 100 Texas, 525.

The shipment being interstate shipment the plaintiff had no right to recover. Houston & T. C.· Ry. Co. v. Mayes, 201 U. S., 321.

The statutes of Texas, arts. 4497-4502, and amendment thereto, are void and contrary to the Constitution of the United States in that they make no provision to the exempting of the carrier from damages when it has performed its duty and failure to furnish cars on account of circumstances beyond its control, and hence for the effect of taking the property of the carrier without due process of law. Houston & T. C. Ry. Co. v. Mayes, 201 U. S., 321.

*Royall G. Smith,* for appellee.

SPEER, Associate Justice.—Appellee recovered judgment against appellant for a penalty of nineteen hundred and seventy-five dollars for its failure to furnish cars upon his written order under articles 4497 to 4502 of the Revised Statutes.

The first assignment of error, under which practically all the questions in the case may properly be discussed, complains of the court's refusal to direct a verdict for the defendant. So much of the statutes as are necessary to be set out in this case are as follows:

"Article 4497: When the owner, manager or shipper of any·freight of any kind shall make application in writing to any superintendent, agent or other person in charge of transportation, to any railway company, receiver or trustee operating a line of railway at the point the cars are desired upon which to ship any freight, it shall be the duty of such railway company, receiver, trustee or other person in charge thereof, to supply the number of cars so required, at the point indicated in the application within a reasonable time thereafter, not to exceed six days from the receipt of such application, and shall supply such cars to the persons so applying therefor, in the order in which such applications are made, without giving preference to any person; *provided,* if the application be for ten cars or less, the same shall be furnished in three days; and *provided further,* that if the application be for fifty cars or more, the railway company may have ten full days in which to supply the cars."

"Article 4498. Said application for cars shall state the number of cars desired, the place at which they are desired and the time they are desired; provided, that the place designated shall be at some station or switch on the railroad."

"Article 4499. When cars are applied for under the provisions of this chapter, if they are not furnished the railway company so failing to furnish them shall forfeit to the party or parties so applying for them the sum of twenty-five dollars per day for each car failed to be furnished, to be recovered in any court of competent jurisdiction, and all actual damages that such applicant may sustain."

"Article 4500. Such applicant shall, at the time of applying for such car or cars, deposit with the agent of such company one-fourth of the amount of the freight charge for the use of such cars, unless the said road shall agree to deliver said cars without such deposit.

And such applicant shall, within forty-eight hours after such car or cars have been delivered and placed as hereinbefore provided, fully load the same and upon failure to do so he shall forfeit and pay to the company the sum of twenty-five dollars for each car not used; provided, that where applications are made on several days, all of which are filled upon the same day, the applicant shall have forty-eight hours to load the car or cars furnished on the first application, and the next forty-eight hours to load the car or cars furnished on the next application, and so on; and the penalty prescribed shall not accrue as to any car or lot of cars applied for on any one day, until the period within which they may be loaded has expired. And if the said applicant shall not use such cars so ordered by him, and shall so notify the said company or its agent, he shall forfeit and pay to the said railroad company, in addition to the penalty herein prescribed, the actual damages that such company may sustain by the said failure of the applicant to use said cars."

"Article 4502. It shall be necessary for the party or parties bringing suit against any railroad company under the provisions of this law, to show by evidence that he or they had on hand at the time any demand for cars was made, the amount of lumber, cotton, wool, hides, or other freight necessary to load the cars so ordered; provided, that the provisions of this law shall not apply in cases of strikes or other public calamity."

Some of the reasons urged in support of the requested peremptory instruction go to the very validity of the statutes above quoted, and will therefore be considered first. The contention that the statutes authorizing the recovery of penalties against railroad companies for failure to furnish cars are contrary to the Fourteenth Amendment of the Constitution of the United States, because they make no provision for exempting the carrier from damages for failure under circumstances beyond its control, and hence amount to a taking of its property without due process of law, may be dismissed summarily by a reference to the decision in the case of Allen v. Texas & Pac. Ry. Co., 100 Texas, 525, wherein our Supreme Court expressly repudiated such a construction and gave to the statute a broader and more liberal interpretation, so that it does not and can not fall within the condemnation of the amendment invoked.

Next it is insisted, inferentially at least, that the statute itself is void for uncertainty by reason of the language employed in article 4502, to the effect that before a shipper may recover under the provisions of the Act he must show by evidence that he "had on hand at the time any demand for cars was made" the necessary freight with which to load them. The argument is that the expression "had on hand" is so indefinite and uncertain as to defeat the statute. While these statutes have repeatedly been held to be highly penal in their nature, and while the rule of strict construction has at all times been applied to them, we nevertheless do not feel that the application of this rule should destroy the statute upon the grounds urged. The rule of strict construction, as applied to statutes, does not consist in giving words the narrowest meaning of which they are susceptible, nor does it consist in adopting that strained construction which would

obviously be contrary to or destructive of the intention of the law-makers, when such intention itself is manifest from the section alone or in connection with other parts of the same Act. The intention of the Legislature, even in penal statutes, when that intention can fairly be discovered, should in all cases control. The rule of strict construction, therefore, is, more properly speaking, a requirement that the plaintiff's case must be brought strictly within the spirit and letter of the statute, the intention of the Legislature, when once that intention is discovered. To be sure, courts can not and ought not to deal with an act as a crime unless it is plainly within the language used by the Legislature, but when determining whether or not the act is within such language, a common sense method of interpreting the language so as to ascertain its real meaning should at all times be employed. A construction should not be employed that would render the law absurd or even meaningless, for this itself is a species of absurdity, when a rational, expressive and wholesome meaning may be ascertained from the language used. The requirement of the statute that the shipper shall have "on hand at the time any demand for cars was made" the necessary freight for loading them, when read in the light of the privilege conferred upon him of forty-eight hours after such car or cars have been delivered, of loading them, must be held to mean, we think, that such person must be the owner or manager of such freight and have such possession of it or control over it as that he can and will be ready and able to load the cars so ordered within the time given him by the statute. Whether or not the shipper has such goods on hand within the meaning of the Act is not made to depend upon feet or miles, but rather upon his ability to deliver the freight and load the cars within the time specified. The very provision allowing forty-eight hours within which to load the cars, and even longer under some circumstances, tends to negative the idea that the freight was to be actually tendered to the possession of the carrier at the time of making demand for cars.

But if mistaken in this, and the proper construction of the statute should be, as contended by appellant, that the freight in such case should be actually delivered to the possession of the carrier, yet the statute would not be void for uncertainty for this very construction makes it certain. In Texas & Pac. Ry. Co. v. Oz Smith, No. 4557, this court, in an unpublished conclusion, construed the phrase "on hand" as follows: "It could hardly have been intended by this to require that the intending shipper shall have the property at the immediate point of shipment at the time of demand, inasmuch as the statute gives the railway company as much as six days from the time of the demand within which to furnish the cars and the shipper forty-eight hours within which thereafter to load them. The provision must mean that he has or owns the property so circumstanced as that it may be shipped within the time named." We think that decision announces the correct rule and gives to the statute a construction which correctly discovers the real intention of the legislative mind.

The Kentucky decision of Louisville & N. R. Co. v. Commonwealth, 35 S. W., 130, 33 L. R. A., 209, is cited in support of appellant's con-

tention that the statute is void for uncertainty. The vice in the Kentucky statute stricken down by that decision was that the act of a railroad corporation in charging and receiving more than "a just and reasonable rate of toll or compensation for the transportation of passengers or freight" was made penal without in any manner establishing a standard of just and reasonable rates of toll, thereby leaving to the determination of individual juries whether or not given rates were just and reasonable. It may be true that such language in a penal statute renders it too indefinite and uncertain to enable those to be affected by it to know definitely beforehand whether or not a given act will be in violation of it, and that was the argument largely upon which the Act was condemned; but even applying that test to the present statute, the carrier in all cases must know, for it has the means of knowing, whether or not the shipper is within the letter of the Act, that is, in a position to load the cars within the time allowed by law. The expression "on hand" is as definite and certain, and perhaps more so, than if the statute had required the shipper to be in actual possession of the property to be shipped. It is as definite, we think, as the phrase "party aggrieved" used in the Act regulating the sale of intoxicating liquors, authorizing certain persons to sue, and which words have been held sufficiently intelligible to render the Act not uncertain. Peavy v. Goss, 90 Texas, 90.

Another difficulty which a very strict construction of the statute would discover has occurred to us in our consultation, and that is that by the terms of article 4499 the penalty against an offending railway company is fixed at "the sum of twenty-five dollars per day for each car failed to be furnished," but the time for which such penalty is to be inflicted is not named, that is, whether the penalty shall be visited upon the company for one day only, or for each day during the time for which such failure may continue. But we think the language employed is fairly capable of the interpretation that the penalty is to be inflicted at the rate of twenty-five dollars per day for each car, and to be continued for the whole time of the carrier's delinquency. Again, a very strict construction would forbid the visitation of a penalty upon the carrier for any failure, however long, if the cars were eventually furnished, for the letter of the Act is "for each car failed to be furnished;" but this construction, though literal, would lead to a manifest absurdity and violation of the evident intention of the Legislature, and is therefore to be rejected.

We will next notice those contentions which would defeat a recovery in the present case, though they do not affect the statute itself. It is insisted that the court should have directed a verdict because the evidence shows that appellee was not the sole owner of the horses and cattle, but the evidence shows he was at least one of the owners and had the actual custody and control of the property, making the shipment in his own name, and this we take to be sufficient.

It is also insisted that the undisputed evidence showed that appellant's failure to furnish the cars upon appellee's demand was due to circumstances beyond its control, but upon this the evidence conflicted and a summary instruction could therefore not have been given. For if appellant's witness Everman's testimony was undisputed, it would

not necessarily be binding upon the jury, since he was an employe of the company and therefore an interested witness, and his testimony at best consisted largely of opinions and conclusions. (McCormick v. Kampmann, 115 S. W., 24; Lake v. Earnest (by this court not yet reported).

It is next insisted that a verdict for appellant should have been directed because appellee's cattle were shipped from Colorado, Texas, to a point in the Republic of Mexico by a continuous shipment and journey, and that therefore the shipment being international, the statutes of Texas authorizing a penalty do not apply in this case. The evidence shows, however, that while appellee did contemplate and did actually finally ship his cattle to a point in the Republic of Mexico, yet the only contract of shipment entered into with appellant was one for transportation from Colorado City to El Paso, Texas. The cattle were not billed through to the Republic of Mexico, and appellant in no manner undertook to deliver the cattle to a connecting carrier at El Paso for further transportation into the Republic of Mexico, or to do otherwise than to deliver them to the order of appellee at El Paso, Texas. The contract was therefore a complete contract looking to the transportation of the property only from one point in Texas to another point in this State, and as such fairly within the rule announced by this court in Gulf, C. & S. F. Ry. Co. v. Texas, 32 Texas Civ. App., 1, and approved by our Supreme Court, 97 Texas, 274, and by the United States Supreme Court, 204 U. S., 404; 51 Law Ed., 541. A single quotation from an illustration made by the United States Supreme Court, in its decision of the case cited will illustrate the correctness of our holding: "To state the question in other words, if the only contract of shipment was for local transportation, would the State law in respect to the mode of transportation be set one side by a Federal law in respect to interstate transportation, on the ground that the shipper intended, after the one contract of shipment had been completed, to forward the goods to some place outside the State?"

Appellee's written requisition for cars was delivered to appellant November 28, 1906, demanding seven cars to be delivered at Colorado on December 2, 1906; was accompanied by the necessary deposit of one-fourth the freight charges, and in all respects complied with the provisions of the statute hereinabove quoted. Appellee and his father were the owners of the cattle and horses contained in the shipment in controversy and had them within easy shipping distance of appellant's pens at Colorado, Texas, on the above dates and until December 13, on which day the cars were actually furnished. The cattle were being kept in a pasture about three and one-half miles from the pens, while the horses were at a farm only about one and one-half miles away. They were so near by to appellant's pens that they could easily have been loaded within four or five hours upon the delivery of the cars, and were so loaded within that time when the cars were finally furnished. Under these circumstances we think the appellee was such owner of the property as was entitled to recover; that he had shown that the property was "on hand" at the time of his requisition for cars, and the jury were authorized to find from the evi-

dence that appellant's failure to furnish cars within the time demanded was without sufficient legal excuse.

Neither do we find any error in the court's rulings in giving or refusing charges.

The judgment is excessive, however, in that the penalty was allowed for eleven days when it should have been for ten only. As already stated, the order was filed on November 28, and the cars were to be furnished on December 2, and were actually furnished on December 13. Excluding from the computation December 2, for appellant had all of that day on which to make the delivery, and excluding also December 13, for there was not a default on that day, there remain only ten days for which the penalty should be inflicted, and the judgment is therefore excessive in the sum of one hundred and seventy-five dollars. The appellee has offered to remit this sum if we hold it to be erroneous, and the judgment is therefore reformed so as to be for the sum of seventeen hundred and fifty dollars, and as thus reformed is affirmed.

*Reformed and affirmed.*

Writ of error granted. Affirmed. 103 Texas.