GULF, C. & S. F. RY. CO. v. MESSER. (No. 5992.)

(Court of Civil Appeals of Texas. Austin. Jan. 8, 1919.)

1. RAILROADS ⬡411(6)—CATTLE ON TRACK— STOCK LAWS—PROOF OF NEGLIGENCE.

Where the stock law has been adopted, to justify recovery for the killing of cattle on a part of the track fenced, or where it is prevented from fencing because of public convenience or necessity or because dangerous to employés or the traveling public, proof of negligence on the part of the railroad is essential.

2. RAILROADS ⬡443(5)—ANIMALS ON TRACK —FENCES.

In an action against a railroad for damages for a cow killed in a cut, evidence held insufficient to show that fencing and placing a cattle guard at only one end of the cut was the cause of the accident.

3. RAILROADS ⬡419(3)—STOCK ON TRACK— DUTY OF RAILROAD.

Where the stock law is enforced, it is sufficient if the railroad company uses such care as a reasonably prudent person would under the same circumstances, not merely the degree of care exercised by the owner of the stock to prevent its running at large.

4. RAILROADS ⬡442(1)—KILLING ANIMALS— EVIDENCE—MATERIALITY.

In an action against a railroad for damages for a cow killed in a cut closed at one end by cattle guard, evidence of railroad section foreman that he had written the company requesting it to remove the cattle guard was immaterial, especially where his reason for requesting its removal was that in times of rain it became full of water, making it difficult to get proper alignment of the rails.

Appeal from Bell County Court; M. B. Blair, Judge.

Action originating in justice court by W. A. Messer against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Lewis H. Jones, of Belton, and Terry, Cavin & Mills and Frank J. Wren, all of Galveston, for appellant.

BRADY, J. Appellee sued appellant in the justice court of Bell county for damages for the alleged negligent killing of his cow, and from a judgment in favor of defendant he appealed to the county court. The case was tried before a jury in the county court, and verdict upon special issues returned in favor of appellee against appellant for $100, and judgment was rendered upon the verdict, from which this appeal was taken.

The trial court submitted the following special issues to the jury:

"(1) 'Negligence' is defined to be the want of ordinary care, that is, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances. In view of the above and foregoing definition of negligence, and bearing the same in mind, do you find from the evidence that the defendant, the Gulf, Colorado & Santa Fé Railroad Company, was negligent in erecting and maintaining a fence and cattle guard across its railroad at the west side of Penelope street? Let your answer be 'Yes' or 'No.'" To this question the jury answered "Yes."

"(2) If you have answered the foregoing question in the affirmative, you will then answer this question: Was the negligence of defendant in constructing and maintaining the fence and cattle guard above referred to the approximate cause of killing the plaintiff's cow? Let your answer be 'Yes' or 'No.'" To this question the jury also answered "Yes."

"(3) What was the reasonable market value of plaintiff's cow at the time she was killed?" Answer of the jury, "$100."

The material facts proven on the trial were as follows: Appellee testified that he lost a cow on the morning of December 16, 1915, of the market value of $150; that he did not know how she was killed, but that she was found lying on the right of way of defendant's road at a place near the west side of Penelope street in the corporate limits of the city of Belton, at the east entrance of the cut that runs under the viaduct; that this viaduct down to and including the west part of Penelope street, which runs north and south, to the cattle guard or pen, is fenced, and that there are steep embankments on either side west of the viaduct, approximately 300 yards; that the street railway crosses the Santa Fé some distance west of the viaduct, and the switches connect with the main line of the railroad a short distance

west of the intersection of the street railway track and appellant's track, and that this part of appellant's right of way is not under fence; that the viaduct at the cut running down to Penelope street forms a pocket or death trap for cattle or stock there being no cattle guard at the west entrance of the cut and no room on either side of the track for an animal to pass; that he knew the stock law was in force in Belton but that he never permitted his cattle to run at large; and that his cow escaped at night without his knowledge.

A son of appellee testified that the cow was found on the morning of December 16, 1915, about 20 feet west of the cattle guard, near Penelope street, and that she apparently had been knocked several feet; that she was killed as a result of the construction of the cut under the viaduct and the cattle guard at the east entrance to the same; that he did not see a train hit the cow and did not know that one hit her.

The section foreman of appellant testified that the right of way was not fenced for a distance of about 200 yards west of the viaduct, and that to fence and put in cattle guards west of the viaduct, which was within the switching limits of the city, would be dangerous to employés of appellant and to the traveling public; that he could not see any use for the cattle guard on the west side of Penelope street, but that, if it were not for this guard, cattle or other animals could enter the cut running under the viaduct in Penelope street, and that said street opens into every other street in town, and the guard prevents cattle entering upon the right of way at this point; that he had written to the company and requested them to have this cattle guard taken out, but they had not done so; and that his reason for wanting it removed was because in times of rain it became full of water, and the ties lying across it made it difficult to get the proper alignment of the rails.

A witness for defendant testified on the issue of market value that a cow such as the one in question was worth anywhere from $50 to $150.

The agent of appellant at Belton also testified that west of the viaduct appellant's tracks were used as a switchyard, and that considerable switching of trains was done there both day and night, and that, because of the danger to the public and employés of appellant, the company did not and could not fence the right of way at this place; that the object of the cattle guard on the west side of Penelope street was to prevent cattle or other animals from entering the cut going under the viaduct; and that the right of way is fenced at that point, but that there was left about four or six feet on either side of a train at this cut, which would per-

mit a cow to pass on the side of the train while in the cut.

A diagram or plat is embraced in the statement of facts, representing the roadbed at the place where the cow was killed, the viaduct, the street railway crossings, and switches.

The testimony of the engineer and fireman on the train that struck appellee's cow was agreed to as follows: That they were the engineer and fireman on the train that struck this cow, and that upon entering the corporate limits the whistle was blown and the bell rung in the usual manner; that, when they reached a point a few hundred feet east of the stockpens, they saw an object on the track ahead of them; that the engineer immediately applied the brakes in emergency, but was unable, with due regard to the safety of the passengers, to stop the train in time to prevent the accident.

It was agreed by the parties that the stock law was in full force and effect in that part of Bell county, including the place where the accident occurred, in December, 1915.

[1] In its proposition under the first assignment of error appellant asserts that, to justify a recovery from the railroad for the killing of cattle on the part of its track not required to be fenced, proof of negligence on the part of the railroad is essential. We believe this proposition is correct, and in view of the disposition which we shall make of the appeal, and the probability of another trial, we shall briefly state our reasons for this holding.

The statute (article 6603) providing for the liability of railroad companies for stock injured or killed, and extending such liability even to counties and subdivisions wherein the stock law has been adopted, contains this proviso:

"Provided, however, that in all cases, if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care."

In Railway Co. v. Cocke, 64 Tex. 151, our Supreme Court, construing a similar provision of the old statutes, held that, where the evidence shows that the railroad company could not lawfully fence its road, or where it would be impracticable to do so with due regard to the public convenience or safety, the liability of the railroad company would be the same as if the road were fenced at such a place. See, also, Railway Co. v. Langham, 95 S. W. 686.

We are of the opinion that, if a railway company fences its track or is prevented from so fencing it because of public convenience or necessity, or because dangerous to its employés or the traveling public, it would not be liable for such injuries, except for the failure to use ordinary care.

[2] We sustain appellant's third assignment of error, which is to the effect that the trial court erred in rendering judgment for appellee, and in not granting appellant a new trial because the answer of the jury to special issue No. 2 is not supported by the evidence, and that there is no warrant in the evidence for the finding by the jury that appellant was guilty of negligence in constructing the cattle guard at Penelope street, and that the negligence of appellant in constructing and maintaining the fence and cattle guard there was the proximate cause of killing appellee's cow.

We have carefully considered all the evidence in the record, and it is our opinion that it is wholly insufficient to show any negligence on the part of appellant in either the construction or maintenance of such fence and cattle guard. Indeed, the evidence seems to show that the cow was killed at a distance of at least 20 feet west of said cattle guard, and that she entered the cut and appellant's tracks from the west side of the cut under the viaduct, and there is no evidence whatever to show that the cattle guard had anything to do with the killing of the cow. The evidence does not show that the cow reached the cattle guard, or that its presence in any wise caused the accident, outside of the question that there is no evidence except the mere expressions of opinions showing or tending to show any negligence of appellant in the construction or maintenance of the fence or cattle guard at Penelope street.

[3] Appellant also complains of the failure to submit to the jury the issue of contributory negligence of appellee in permitting or allowing his cow to be at large, it having been pleaded and proven that the stock law was in force, and appellant having requested the submission of such an issue. We think this issue should have been submitted, and if the evidence should be the same upon another trial, the trial court should submit the issue. Railway v. Tolbert, 90 S. W. 508. We will add, however, that where the stock law is in force, if stock should be found upon the tracks of a railroad company, it is sufficient if the employés of the railroad company use such care as a reasonably prudent person would under the same circumstances have used to avoid injury, and that in determining this question the degree of care exercised by the owner of the stock to prevent its running at large would be immaterial.

[4] Appellant's eighth assignment of error complains of the action of the trial court in permitting the witness L. W. Taggart to testify over appellant's objection as follows:

"Q. State whether or not you have ever advised the railroad company to remove the cattle guard near the place where this cow was killed. A. I have written the company and requested them to move this cattle guard, but they have not done so."

We think the objections to this question and answer were good, especially in view of

the explanation given by said witness as to his reasons for requesting the cattle guard to be removed. As admitted, this testimony was irrelevant, immaterial, and prejudicial, and the objections should have been sustained.

For the reasons hereinabove given, the judgment of the trial court will be reversed, and the cause remanded for another trial.

Reversed and remanded.