### CLARK et al. v. MERRIAM & MILLARD CO.
#### (No. 9298.)

(Court of Civil Appeals of Texas. Ft. Worth. May 1, 1920. Rehearing Denied June 12, 1920.)

1. **Gaming ⬤⇒50(1)—Whether contract for future delivery of grain was a gambling contract held for jury.**

Whether contract for future delivery of grain was a gambling contract *held* a question for the jury, in view of evidence of conversations between the parties after contract was entered into, though the only communications between the parties theretofore was by correspondence, none of which tended to show any understanding other than expressed in the contract.

2. **Gaming ⬤⇒12—That seller would have made delivery if demanded not decisive.**

That seller in contract for future delivery of grain could, and if demanded would, have made a delivery, is not necessarily conclusive against delivery not having been intended by either party.

**3. Evidence ⬤➡258(1)—Previous authority of broker to make admission must be shown.**

That statements of a broker, through whom defendants were procured to enter into a contract with plaintiff, may be admissible as an admission of plaintiff that it from the first understood the contract to be a gambling transaction, such statements being made when the broker tried to induce defendants to make additional payments to keep the contract in force, authority of the broker to thus bind plaintiff must be shown.

**4. Sales ⬤➡384(2)—Contract for sale of grain for future delivery held to fix market value at Omaha as basis for damages.**

Contract of sale of grain, for future delivery, made on the form of the Omaha Grain Exchange, though binding seller to ship to buyers at F., on their instructions, *held* to fix the market value at Omaha as the basis for damages in case of nonperformance by buyers.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by the Merriam & Millard Company against Champ Clark and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Capps, Cantey, Hanger & Short and Phillips & Trammell, all of Ft. Worth, for appellants.

Geo. M. Hopkins, of Denton, for appellee.

DUNKLIN, J. Champ Clark and T. H. Clark, residing in the town of Frisco, Collin county, Tex., entered into a written contract with the Merriam & Millard Company, a corporation doing business in the city of Omaha, Neb., as a grain dealer, which, upon its face, purported to be a sale to them by the Merriam & Millard Company of 20,000 bushels of white oats, at the price of 54⅝ cents per bushel. The contract purported to be on the form of the official contract of the Omaha Grain Exchange, and was substantially the same contract as set out in the opinion by this court in the case of Merriam & Millard Co. v. T. A. Cole, 198 S. W. 1054.

The contract was dated September 3, 1913, and substantially was to the effect that plaintiff had sold to the defendants 20,000 bushels of white oats at the price of 54⅝ cents per bushel for December delivery, with the privilege of the defendants, at their option, to defer the date of delivery to May 1st by paying one-fourth of a cent per bushel for storage charges for each 10 days after December 31, 1913, and such further sums as margins as might be necessary to cover a decline in the market price of oats. It contained a stipulation that it was made under the rules, regulations, and customs of the Omaha Exchange of the city of Omaha, which rules and regulations would be the basis for the set-

tlement of all differences between the parties to the contract. By the terms of the contract, the plaintiff had the right to cancel it upon the defendants' failure to furnish shipping directions for the oats when requested so to do by the plaintiff, or upon their failure to pay storage charges upon the oats, or to deposit additional margins to cover any further decline in the market price of the oats, such margins to be called for by the secretary of the Exchange when notified by plaintiff so to do, and notice of such call to be served upon the defendants by said secretary. It was further stipulated that in the event defendants should fail to make such further payments of margins and storage charges, the plaintiff would have the right to cancel the contract and hold the defendants liable for the difference between the market value of the oats at that time and the contract price, and also for unpaid storage charges then due.

At the time the contract was entered into the two Clarks paid to Exchange for the benefit of the Merriam & Millard Company the sum of $1,000, or five cents per bushel as a margin to cover shrinkage in the market price of the oats, and later paid $150 on February 2, 1914, and the same amount on March 6, 1914, to cover storage charges on the grain. The market price of oats having declined, an additional sum of $800 was demanded by the company as further margin to cover the decline in price and also additional storage charges, which the Clarks refused to pay. Upon such refusal the plaintiff elected to cancel the contract, and thereupon charged the Clarks with the contract price of the oats, and credited them with the market value of the same at the time of the cancellation of the contract, plus the amount that had been paid. This left a balance in favor of the company of $1,273.54, for which the company instituted this suit against the Clarks, and from a judgment in favor of the plaintiff for that amount, with interest thereon at the rate of 6 per cent. per annum from April 29, 1914, to the date of the judgment, which aggregated the sum of $1,628, the defendants have prosecuted this writ of error.

The case was tried before a jury, who returned a verdict in favor of the plaintiff for the amount of the judgment in obedience to a peremptory instruction by the court so to do.

The principal defense urged to the suit was that the pretended purchase and sale of oats, evidenced by the contract, was understood by the parties at the time to be merely a gambling contract or wager on the rise and fall of oats, that neither of the parties intended or understood that there should be any actual delivery of the oats, and there-

fore the contract was illegal and void and not binding upon the defendants.

The first assignment presents the contention that the defendants introduced testimony tending to support that defense, in view of which the court erred in directing a verdict against them. The proof showed that the written contract of sale and purchase was made out in plaintiff's office in Omaha, Neb., mailed to the defendants at their home in Frisco, Collin county, Tex., and that the defendants upon receipt of it ·signed and returned it to the plaintiff at Omaha. It thus appears that the only communication between the parties at the time the contract was entered into was by correspondence, none of which tended to show any understanding between the parties other than as expressed in the contract. At the time the contract was entered into, Champ Clark was employed in the First National Bank at Frisco, Collin county, Tex., where he resided. Frisco is a little town of about 1,200 inhabitants. T. H. Clark was his brother-in-law, and was then engaged in farming in the country near Frisco. The proof showed that neither of the Clarks had ever engaged in the grain business as grain merchants, and at the time they signed the contract neither of them had any expectation of calling for a delivery of the oats to them, but both of ·them understood and intended at the time merely to speculate upon the expected advance in the price of oats which they had been advised would likely occur. In other words, the two Clarks expected and intended to gamble the amount they deposited on the rise or fall of the market price of oats, and expected to lose what they paid to the plaintiff if the market price of oats went down sufficiently to absorb the amount they had deposited, or might later deposit, as margins and storage charges, but they did not expect or intend that their loss should exceed the amount so paid to the plaintiff. Such understanding and intention on their part, however, was not communicated to the plaintiff at the time the contract was entered into.

According to testimony offered by plaintiff, it was plaintiff's intention to make an actual delivery of the oats if called for by the defendants, and it was prepared so to do, and it did not intend or understand that the contract was other than as shown by its terms; in other words, that plaintiff did not intend or understand that the contract was a gambling transaction.

But some months after the contract was made, E. A. Beardsley, who was in general charge of the office of the Merriam & Millard Company at Omaha and handled all correspondence and contracts made through that office, and who held that position with the plaintiff company at the time the contract was executed, and who acted for the company in that transaction, made a trip to Frisco for the purpose of inducing the Clarks to continue the contract by putting up further margins and storage charges. Champ Clark testified as follows with reference to a conversation between himself and Beardsley on that visit:

"I could not state the exact date I met Mr. Beardsley, but it was some time possibly in May, the latter part of May; it may have been later than that; I mean May, 1914. He discussed with me the question of our carrying out this contract; he solicited me to carry out this contract and to make additional payments. I did not do so. I did discuss with Mr. Beardsley at that time our ability to take 20,000 bushels of oats, and whether the actual delivery of oats was to be made; he told me there was not to be any actual delivery of these oats. He told me it was to be a gambling transaction. He told me that the company never contemplated the delivery of any oats. He said if oats went up, I won, and if they went down, I lost—words to that effect. He said that, according to my best recollection. I did not pay any money to him then or afterwards. I told him at that time that I did not want to have anything further to do with that gambling transaction. * * *

"We didn't raise any question as to the validity of the contract, because we understood it from the beginning was a pure gambling deal. We went into that contract knowing that it was a gambling deal, and the contract was a mere subterfuge; that was the understanding; that was my understanding."

[1, 2] In view of the testimony quoted and other facts and circumstances in evidence, we think the trial court erred in giving the peremptory instruction in plaintiff's favor. And in this connection we deem it proper to say that by reason of such testimony this case is distinguishable from the case of Merriam & Millard Co. v. Cole, already cited. Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363; Appling v. Watts, 98 S. W. 935; Pate v. Wilson Bros. Merc. Co., 208 S. W. 234; T. &. P. Ry. Co. v. Taylor, 103 Tex. 367, 126 S. W. 1117, 1200; Id., 54 Tex. Civ. App. 419, 118 S. W. 1097. And the fact, as testified to by Beardsley that the plaintiff could and would have made a delivery of the grain contracted for if the defendants had demanded it, is not necessarily controlling in plaintiff's favor. Logan v. Norris, 100 Tex. 228, 97 S. W. 820.

[3] Plaintiff was first put in touch with the defendants through A. Galbraith, a broker, doing business in the city of Dallas, and who advised plaintiff that the defendants desired to purchase oats. In obedience to that advice, plaintiff wrote to Clark and Clark, and inclosed them the contract, which was later executed; and it appears that plaintiff paid Galbraith a broker's commission for thus procuring the contract. Later, and before the cancellation of the contract by plaintiff, Galbraith, at the request of the plaintiff,

made an effort to induce the defendants to pay more money to cover margins and storage charges necessary to keep the contract alive. Predicated upon such proof, the defendants offered the testimony of T. H. Clark and Dr. W. L. Saye to prove certain statements made by Galbraith when those two witnesses visited him in Dallas in reply to Galbraith's efforts to induce Clark to make the additional payments then being demanded by the plaintiff in order to keep the contract in force, as tending to show an admission binding upon the plaintiff that its managing officer at the inception of the contract understood and intended it to be a gambling transaction. The testimony so offered was excluded upon the ground, substantially, that no sufficient predicate had been established to show authority on the part of Galbraith to thus bind the plaintiff. We are of the opinion that there was no error in that ruling.

[4] We are of the opinion, further, that there was no error in the exclusion of testimony offered by the defendants to show the market value of oats, in the town of Frisco, Collin county, Tex., at the time the contract was canceled; the contention of defendants being that the market price of oats at Frisco, which was higher than that at Omaha, should control, and that therefore the damages recoverable by plaintiff, if any, would be lessened to that extent. While according to the terms of the contract the plaintiff bound itself to ship the oats to the defendants at Frisco upon their instructions so to do, we think it clear that the market value of the oats at Omaha was fixed as the basis for the right in plaintiff to cancel the contract upon the defendants' failure to deposit additional margins to cover the decline in price and to hold the defendants liable for damages to be calculated upon that basis, if the contract is to be enforced in accordance with its terms.

For the reasons noted, judgment is reversed, and the cause remanded.