

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

Gerald C. Mann

XXXXXXXXXXXXXX
ATTORNEY GENERAL

Mr. G. A. Hight
Chief Accountant
Board of County and District Road Indebtedness
Austin, Texas

Dear Sir:

> Opinion Number O-1293
> Re: Construction of certain
> provisions of House Bill #688,
> passed by the Forty-sixth Leg-
> islature, Regular Session, 1939

We have your letter of August 16, 1939, in which you ask our opinion of several questions which have arisen out of the above captioned bill which outlines the procedure of the Board in the administration of that Act.

Under date of June 9, 1939, in our Opinion No. O-906 we determined the constitutionality of this bill. It was our opinion that the purpose of this bill was not violative of Article 8, Section 7, or Article 3, Section 51 of our Constitution, but insofar as the bill before us at that time attempted, prior to the full payment of all obligations already eligible for participation, to devote the surplus accumulated in the County and Road District Highway Fund to the payment of obligations made eligible for such participation for the first time by such bill and to other purposes, was unconstitutional and would constitute a diversion of a special fund in violation of the Constitution. House Bill 688, as finally passed by the Legislature and signed by the Governor, in our opinion, has satisfactorily removed the provision to which we excepted.

We shall take up your questions in the order in which they are presented, your first question being --

"Section 5 of the bill, after allocating one-fourth of the occupation or excise tax on gasoline to the credit of the available free school fund, provides that one-fourth shall go to and be placed to the credit of the fund to be known as 'County and Road District Highway Fund' subject to the provisions and limitations of Section 3 of this Act. Will you please advise us what the limitations referred to are and what effect such limitations, if any, would be upon the use to be made of the County and Road District Highway Fund and the operations of the Board of County and District Road Indebtedness?"

By reference to Section 3 we find that it expressly deals with the duties of the Highway Department and directs development of highways and the maintenance thereof "from funds available to the State Highway Department." Section 5 divides the proceeds of the occupation tax on the business of selling gasoline as follows: One-fourth to the Available School Fund, one-fourth to the County and Road District Highway Fund, subject to the provisions and limitations of Section 3 of this Act, and the remainder to the State Highway Department. A careful reading of Section 3 of the Act reveals no limitations, whatever, upon the one-fourth allocated to the County and Road District Highway Fund. Under the rules of statutory construction it has been decided that a statute or a provision thereof should not be given a construction rendering it meaningless, if the language can otherwise be construed. See City of Houston v. Allred, 71 S. W. (2d) 251; Galveston H & H. R. Co. v. Anderson, 229 S. W. 998; Stolpe v. Karren, 191 S. W. 600; Texas & Pacific Ry. Co. v. Taylor, 118 S. W. 1097. It is obvious from the reading of Section 3 that there are no limitations at all relative to the one-fourth of the occupation or excise tax that is allocated to the Board of County and District Road Indebtedness under Section 5 of the Act, and it is therefore our conclusion that the limitation imposed in Section 5 upon the funds allocated to the County and Road District Highway Fund is meaningless. To so hold does not in anywise impair the provision of the Act.

Your second question is as follows:

"Should this Board now include in the credit
allowed to each county the total amount paid by
such county for the years 1933 to 1937, inclusive,
on their debt service, or should this Board limit
the credit to amounts paid by each county on
issues now outstanding and pay such credits to
the counties over the life period of the out-
standing bonds?  In this connection you are re-
ferred to Conference Opinion No. 3021 rendered
by Honorable William McCraw, Attorney General, on
August 11, 1938."

In reply to your second question we direct your at-
tention to the declaration of policy contained in House Bill
688, Section 1, wherein it provides:

"By reason of the foregoing, a heavy and undue
burden was placed and still rests upon the counties
and defined road district and their inhabitants,
and both a legal and moral obligation rest upon
the State to compensate and reimburse such counties
and defined road districts, which, as aforesaid,
have performed functions resting upon the State and
have paid expenses which were and are properly State
expenses, all for the use and benefit of the State,
and to the extent provided herein that the State
provide funds for the further construction of roads
not designated as a part of the State Highway Sys-
tem."

This provision is preceded by others which call at-
tention to the fact that the State recognizes and declares
that all highways now or heretofore constituting a part of
the system of State highways and that all roads not consti-
tuting a part of such system which have been constructed in
whole or in part from the proceeds of bonds, warrants or
other evidence of indebtedness issued by counties and de-
fined road districts of the State of Texas, under the laws
authorizing the same, have been and are and will continue
to be beneficial to the State of Texas at large and have

contributed to the general welfare, settlement and development of the entire State. Manifestly it was intended that the counties or defined road districts should be compensated for money expended in the construction of roads which by the declaration of policy have contributed to the general welfare, settlement and development of the entire State. We, therefore, answer your question as follows:

In our opinion this Board should include in the credit allowed to each county the total amount paid by such county for the years 1933 to 1937, inclusive, on their debt service on issues now outstanding or issues which may have been outstanding at the time of the enactment of Chapter 13, Acts of the Third Called Session of the Forty-second Legislature, of 1932. We think that from the language of the bill itself, that is, House Bill 688, as found in paragraph 2, subsection (h), Section 6, which reads as follows:

"As soon as practicable after the passage of this Act and before the Lateral Road Account is allocated to the counties, the Board shall determine the amount each county and each defined road district has paid since January 1, 1933, under the provisions of Chapter 13, Acts of the Third Called Session of the Forty-second Legislature, as amended, toward its debt service upon bonds which at the time of payment were eligible to participate in the County and Road District Highway Fund."

it is plain that the intention of the Legislature is that the counties and defined road districts be fully reimbursed for all moneys expended on eligible issues for debt service during the years 1933 to 1937, irrespective of whether or not there are issues now outstanding. We think the declaration of policy is clear on this point.

The third question you have submitted reads as follows:

"In connection with the deductions of advancements made by the State from the amount credited to the counties as provided, is it intended by

the Act that such deduction be made where possible
over the life period of the bonds of each county
affected, as we are now doing under authority of
the above quoted opinion?"

It must be borne in mind that the express basic pur-
pose of this law is to lift the burden of ad valorem taxes,
from the citizens of the various counties and defined road
districts, which may have been used for the construction of
State highways or for the retirement of obligations incurred
in the construction of highways.  In our opinion there is
ample authority under this law for the Board of County and
District Road Indebtedness to make such deduction over the
life period of the bonds.  And insofar as Opinion No. 3021,
above mentioned, authorizes and directs the payment of sums
due the various counties in the form of increased percentages
of participation, we readopt same and further state that any
method thus designed to accomplish the purpose for which this
law was passed would in our opinion be within the authority
of the Board.  Under the Attorney General's opinion above
cited, your Board undertook to allocate the so-called surplus
by way of increased percentages of participation on eligible
issues, and this, we think, was a proper application and will
effectively accomplish the purpose of the law.  You are, there-
fore, advised that in our opinion the Board should continue the
method adopted pursuant to the authorization conferred by law
and as interpreted by Section 5 of Opinion No. 3021, rendered
by the Attorney General, August 11, 1938.

The fourth question you submit is as follows:

"Is it the duty of the Board to audit or other-
wise verify the records of expenditures or obli-
gations of each county to determine the amount of
bonds, warrants or other legal obligations issued
prior to January 2, 1939, the proceeds of which
were actually expended in acquiring rights-of-way
for State designated highways?"

To answer this question, we refer to paragraph 2 under
subsection (h), Section 4 of the Act, which reads, in part, as
follows:

"The moneys allocated to each county from the
Lateral Road Account shall be used by said county,
first, for paying the principal, interest and sink-
ing fund requirement maturing during the fiscal
year for which such money was allocated to such
county for bonds, warrants or other legal obliga-
tions issued prior to January 2, 1939, the proceeds
of which were actually expended in acquiring rights-
of-way for State designated highways, it being the
intention of the Legislature to designate and set
apart sufficient money to pay off and discharge
said outstanding obligations incurred for right-
of-way acquisition."

In this we find a declaration of legislative intent
and to properly effectuate this intention we are of the
opinion that it will be necessary for the Board to adopt the
same method followed in the matter of recording items of in-
debtedness incurred in the construction of highways which
have been designated as a part of the State Highway System,
that is, the right-of-way obligation should be handled in
like manner as the presently "eligible obligations". There-
fore, it is our opinion that it will be the duty of the
Board to audit or otherwise verify the record of expendi-
tures or obligations of each county to determine the amount
of money actually expended in acquiring rights-of-way for
State designated highways in order to carry out the mandate
of this provision of the Act.

We quote here your fifth question, which reads as
follows:

"What are the Board's duties as the refund-
ing agent of each county as provided in the
second paragraph of subsection (i) of Section
6, and what are the limitations on refunding
eligible and ineligible indebtedness under this
subsection?"

We think that in order to properly interpret the
meaning of this provision of the law wherein the object or

purpose of the provision of the statute is not plain, it
becomes necessary to read the entire section. Under the
rule of statutory construction, all of the language used
should be taken into consideration when endeavoring to
ascertain the object or purpose, and in this connection
it must be noted that subsection (i) of Section 6 begins
as follows:

> "The county commissioners' court of any county
> may exercise the authority now conferred by law
> to issue refunding obligations for the purpose of
> refunding any eligible debt of the county, or of
> any defined road district; and such refunding ob-
> ligations when validly issued shall be eligible
> obligations within the meaning of this Act, if
> said Board of County and District Road Indebted-
> ness shall approve the maturities of said refund-
> ing obligations and the rate of interest borne by
> them."

Then passing over to the last sentence of the second para-
graph of the same section, we find:

> "All actual expenses incurred in the refund-
> ing of an eligible indebtedness, including the
> cost of proceedings, printing, legal approval
> and interest adjustment, shall be chargeable
> against the moneys theretofore or thereafter
> collected from ad valorem taxes, or at the op-
> tion of the commissioners' court conducting such
> refunding, may be paid from any other money under
> its control and available for the purpose."

We have underscored the term "eligible indebtedness"
for the purpose of strengthening our conclusion that this
section refers to and contemplates only that such items of
indebtedness shall be submitted to the Board for approval
prior to a refunding thereof. We refer you to Section 2 of
House Bill 688, which contains the definition of terms and
expressions used throughout the Act, and find there -- "the
expression 'eligible obligation' as used in this Act shall
mean obligations the proceeds of which were actually ex-
pended on State highways." We think the expression "eligi-
ble indebtedness" synonymous with the expression "eligible

obligation" and therefore comes within this definition.
We are of the opinion that the Board's duties as to the
refunding assignment provided in the second paragraph of
subsection (i) of Section 6, are limited to the refunding
of eligible obligations as defined by this Act, and that
such duties do not extend to and include any so-called
ineligible indebtedness which may or may not participate
in the excess funds provided herein to be credited to the
account to be known as the Lateral Road Account.

The last paragraph of subsection (i) makes the Board
of County and District Road Indebtedness the refunding agent
of each county and as such agent is directed to cooperate
with the commissioners' court of each county in effecting the
necessary refunding of each issue of bonds, and that the
Board shall prepare the necessary refunding order for the
commissioners' court, prepare the proceedings and act in an
advisory and supervisory capacity to the end that the ex-
pense of refunding any issue of bonds may be reduced to a
minimum. Having determined in the preceding paragraph that
the duties of the Board in the matter of refunding of bonds
extend only to "eligible issues", it necessarily follows
that the duties allocated in this paragraph of subsection
(i) extend to only the eligible issues. It is our conclusion
that the language of this section is merely directory and
that the Board shall be required to act in that capacity only
as a means of reducing the expense of refunding any issue of
such bonds to a minimum. Inasmuch as this same paragraph
requires that any item of expense incurred in connection with
a refunding must have the affirmative approval of the Board
before being incurred, we think that in their advisory and
supervisory capacity, they could under this law, if deemed
expedient, prepare the necessary refunding orders, proceed-
ings, and perform other duties incident to the completion of
a refunding of any issue of such bonds.

You are, therefore, advised that in our opinion your
duties as such refunding agent, with respect to the prepara-
tion of proceedings and refunding order, would rest within
the discretion of the Board and would not become mandatory
except in the event the prospective costs of such proceedings
by other agencies appear excessive.

Your sixth question reads as follows:

"Will you please further advise the Board
to whom or to what agency the expense of the
Board for performing the services to the coun-
ties in the refunding of the county issues as
directed by the provisions of this subsection
shall be charged?"

In our opinion, any expense incurred in the refund-
ing of any such obligation is primarily an expense of the
county, defined road district or political subdivision pro-
posing such refunding, and should, therefore, be charged to
such agencies. The last paragraph of subsection (i) pro-
vides, in part, that:

"All actual expenses incurred in the refund-
ing of an eligible indebtedness, including the
cost of proceedings, printing, legal approval and
interest adjustment, shall be chargeable against
the moneys theretofore or thereafter collected
from ad valorem taxes, or at the option of the
commissioners' court conducting such refunding,
may be paid from any other money under its con-
trol and available for the purpose."

We think this clearly indicates the Legislature's
intention that the county, defined road district or political
subdivision shall bear the expense of any such refunding, and
you would properly charge any such expense accruing to the
Board in connection with such refunding to the county, de-
fined road district or political subdivision instigating such
refunding program.

We quote here your seventh question:

"Can the several county commissioners' courts
employ on a salary or contract basis, subject to
the affirmative approval of this Board, one or
more persons to assist in the refunding of such
indebtedness and pay for such services in the
manner provided in the Act for the payment of
actual expenses of refunding eligible indebted-
ness?"

It must be borne in mind that this law requires that all actual costs of refunding eligible indebtedness be submitted to the Board for approval before such costs are incurred. It then follows that the Board must pass upon all such items of expense, and if in its opinion certain items of expense sought to be incurred are considered unnecessary, it should disapprove them. The law states that only the actual expense of refunding, which includes cost of proceedings, printing, legal approval and interest adjustments, shall be approved. This itemization of expense is not a limitation thereon but is suggestive of that which under ordinary conditions should constitute actual expenses. The Legislature, of course, contemplated that certain other costs might arise in connection with a refunding and could be reasonably classified as necessary or actual refunding expense. Consequently, it delegated to the Board the duty and power of determining the necessity for such costs by requiring that all anticipated expense of refunding eligible indebtedness be submitted to the Board for approval in advance of incurring same. No appeal has been provided in the event the Board disapproves an item of expense; hence we must conclude that the Board's ruling thereon would be final. The Board is vested with the further power to refund such debt itself and charge the expense thereof to the county, defined road district or political subdivision instigating such refunding. The purpose of this power being to hold the cost of refunding eligible indebtedness to a minimum.

Consistent with the foregoing conclusion the Board would be required to determine whether or not the employment of a person or persons to "assist" in a refunding would be a necessary or actual expense incident thereto, as contemplated by the Legislature. The word "assist", appearing in your questions, has a very broad and indeterminate meaning, but as used here it must mean "in aid of", "being of service" or "helping". Such terms are likewise indefinite; hence it must lie with the Board to determine the necessity for such employment and whether or not it is indispensable in accomplishing a refunding. The facts of each such refunding must ultimately define the course the Board is to follow in approving or disapproving

the costs of employing a person or persons to assist a county, defined road district or political subdivision in refunding its eligible indebtedness.

We are unable to find in the Act any mention of the employment of persons on a salary or contract basis for the purpose of assisting in the refunding of such indebtedness as may be sought to be refunded, and we think that under the law a commissioners' court has the power and authority to contract for the services of experts on questions of financing and refinancing in the same manner as they now have authority to retain architects, attorneys, auditors or engineers, but we think that the compensation for such services in this connection must, under the law, be submitted to the Board for approval prior to incurring same. If, then, in the discretion of the Board, it is determined that such cost is not a necessary or actual cost as contemplated by this law, we think the Board should properly disapprove such item of expense.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Clarence E. Crowe
    Clarence E. Crowe
            Assistant

APPROVED OCT. 7, 1939

/s/ W. F. Moore

FIRST ASSISTANT
ATTORNEY GENERAL

CEC-s