**INTERSTATE FORWARDING CO. v. VINEYARD, Tax Assessor. (No. 10185.)**

Court of Civil Appeals of Texas. Dallas. Jan. 28, 1928.

Rehearing Denied March 3, 1928.

1. Taxation ⬤⇒336(2)—County tax assessor may bring suit to require warehouseman to furnish list of property stored, owners, and their residences (Const. art. 16, § 1; Rev. St. 1925, arts. 4669, 4670, 7178, 7214, 7222, 7243).

Suit to require warehousemen to comply with Rev. St. 1925, art. 7243, by furnishing county tax assessor list of property stored in warehouse, together with list of owners and their residences, may properly be brought by county tax assessor, rather than in name of state, under Const. art. 16, § 1, Rev. St. 1925, arts. 7178, 7214, 7222, notwithstanding articles 4669, 4670.

2. Taxation ⬤⇒336(2)—Tax assessor must demand of warehouseman list of property stored, names of owners, and residences (Rev. St. 1925, art. 7243).

Under Rev. St. 1925, art. 7243, it is duty of county tax assessor to demand of any person in charge of warehouse list of property stored in such warehouse, together with list of names of owners of such property and their residences.

3. Statutes ⬤⇒238—Statute containing grants of power are construed to include authority to do things necessary to accomplish objects.

Statutes containing grants of power are to be construed so as to include authority to do all things necessary to accomplish objects of grant.

4. Statutes ⬤⇒245—Statute, requiring warehousemen to furnish tax assessor with list of property stored, being remedial, should be liberally construed to accomplish purpose (Rev. St. 1925, art. 7243).

Since Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor list of all property stored in warehouse, together with list of owners of such property and their residences, is remedial statute, liberal and comprehensive construction to accomplish its purpose should be indulged; such construction being in harmony with purpose for which it was enacted.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Taxation ⬦⟿336(2)—Order of commissioners' court is not required to authorize institution of tax assessor's suit to require warehouseman to furnish list of property stored under statute (Rev. St. 1925, arts. 7243, 7297).**

It is not necessary that commissioners' court enter order authorizing institution of suit by county tax assessor to require warehouseman to furnish list of property stored and names of owners and their residences under Rev. St. 1925, art. 7243, as prerequisite for institution of such suit, notwithstanding article 7297.

**6. Constitutional law ⬦⟿208(4)—Warehouseman ⬦⟿2—Classification in statute requiring warehousemen to furnish tax assessor list of property stored is legislative function, and should not be set aside, unless purely arbitrary (Rev. St. 1925, art. 7243).**

Classification in Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, and names of owners and their residences, is legislative function, and should not be set aside by courts, unless basis is purely arbitrary.

**7. Constitutional law ⬦⟿208(4)—Statute, requiring warehousemen to furnish tax assessor with list of property stored, held not invalid for arbitrary classification (Rev. St. 1925, art. 7243; Const. art. I, § 3).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, together with list of owners of such property and their residences, *held* not unconstitutional as violating Const. art. 1, § 3, by placing warehousemen in different classification from banks and trust companies and others having in their custody property belonging to another, since Legislature may classify persons, organizations, or corporations according to their business, and may apply different rules to those which belong to different class.

**8. Constitutional law ⬦⟿206(4)—Statute under which tax assessor may require warehousemen to furnish list of property stored held not invalid as abridging privileges and immunities of citizens (Rev. St. 1925, art. 7243; Const. U. S. Amend. 14).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, together with list of owners of such property and their residences, when construed to authorize tax assessor to bring suit to compel warehouseman to furnish list, *held* not to violate Const. U. S. Amend. 14, providing that no state shall make law abridging privileges and immunities of citizens, notwithstanding that such statute will subject certain classes of persons to litigation on refusal to comply with terms.

**9. Statutes ⬦⟿245—Revenue measure, requiring warehousemen to furnish tax assessor with list of property stored, should be construed to carry out legislative intent (Rev. St. 1925, art. 7243).**

Since Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, together with list of owners of such property and their residences, is

revenue measure, construction should be indulged in and legal effect accorded that will carry out legislative intent.

**10. Constitutional law ⬦⟿284(1)—Statute, requiring warehousemen to furnish tax assessor with lists, without providing compensation for making them, held not to deny due process (Rev. St. 1925, art. 7243; Const. U. S. Amend. 14).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, together with list of owners of such property and their residences, *held* not invalid as violating Const. U. S. Amend. 14, for denial of due process on ground that no compensation is provided for time, trouble, and expense of making out list provided for.

**11. Eminent domain ⬦⟿2(11)—Statute, requiring warehousemen to furnish tax assessor with lists of property stored, owners, and residences, held not to take property for public use without compensation (Const. art. I, § 17; Rev. St. 1925, art. 7243).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, together with list of names of owners of such property and their residences, *held* not invalid as violating Const. art. 1, § 17, by seeking to take warehousemen's property and apply it to public use without adequate compensation.

**12. Searches and seizures ⬦⟿7(1)—Statute, requiring warehouseman to furnish tax assessor with list of property stored and owners, held not to contemplate unreasonable search and seizure (Rev. St. 1925, art. 7243; Const. art. I, § 9).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored, together with list of names of owners of such property and their residences, *held* not unconstitutional as violating Const. art. 1, § 9, by contemplating unreasonable seizure and search of papers in possession of warehousemen, in view of Rev. St. 1925, art. 5568.

**13. Warehousemen ⬦⟿2—Law requiring warehousemen to perform reasonable public service incident to exercise of rights conferred in statute governing such warehousemen is as valid as provisions creating public warehouseman (Rev. St. 1925, arts. 5568–5577).**

Where law confers valuable right to be enjoyed by people generally at their own election for private gain, as in case of public warehousemen under Rev. St. 1925, arts. 5568–5577, provisions of law, requiring of those enjoying its benefits performance of reasonable public service incident to exercise of rights conferred, are as valid as provision creating and conferring right.

**14. Taxation ⬦⟿327—Statute, requiring warehousemen to furnish tax assessor with list of property stored, held authorized under constitutional provisions for assessment of property (Rev. St. 1925, art. 7243; Const. art. 8, §§ 1, 17).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of

---

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property stored, together with list of owners of such property and their residences, *held* authorized by Const. art. 8, § 17, as provision for assessment of property, subject to taxation under section 1, or as to other property required to be taxed.

**15. Constitutional law ⊜⇒68(4)—Courts cannot gainsay enforcement of revenue regulation requiring warehousemen to furnish assessor with list of goods stored, on ground of unreasonableness (Rev. St. 1925, art. 7243).**

Revenue regulation, such as Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of goods stored, being one which Legislature had authority to enact, courts are not at liberty to gainsay enforcement thereof on ground of unreasonableness.

**16. Constitutional law ⊜⇒283—Eminent domain ⊜⇒2(11)—Constitutional provisions against taking private property without compensation or without due process do not limit power of taxation.**

Constitutional provisions that private property shall not be taken for public use without just compensation, and that no person shall be deprived of property without due process of law, do not limit legislative power in regard to taxation.

**17. Constitutional law ⊜⇒90—Statute, requiring warehousemen to furnish assessor with list of property stored, held not to curtail liberty of speech (Rev. St. 1925, art. 7243; Const. art. 1, § 3).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish list of goods stored with names of owners of such property and their residences, *held* not unconstitutional under Const. art. 1, § 3, as curtailing liberty of speech and corresponding liberty of silence.

**18. Constitutional law ⊜⇒83(2)—Statute, requiring warehousemen to furnish assessor with list of goods stored, held not to require involuntary servitude (Const. U. S. Amend. 13; Rev. St. 1925, art. 7243).**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish list of goods stored with names of owners of such property and their residences, *held* not to violate Const. U. S. Amend. 13, by requiring warehousemen to perform involuntary servitude.

**19. Constitutional law ⊜⇒68(4)—Enactment of revenue measure, requiring warehousemen to furnish assessor with list of goods stored, rests in sound discretion of Legislature (Rev. St. 1925, art. 7243).**

Enactment of revenue measure, such as Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored and names of owners and their residences, rests within sound discretion of Legislature.

**20. Warehousemen ⊜⇒2—Statute governing public warehousemen held not to conflict with statute requiring warehousemen to furnish assessor with list of property stored (Rev. St. 1925, art. 7243).**

Laws found in Rev. St. 1925, arts. 5568–5577, relating to public warehousemen and their right to pursue such business, *held* not in conflict with article 7243, requiring warehousemen to furnish tax assessor with list of property stored and names of owners and their residences.

**21. Constitutional law ⊜⇒63(3)—Statute, requiring warehousemen to furnish assessor with list of property stored, held not to delegate to assessor right to suspend its provisions (Const. art. 1, § 28; Rev. St. 1925, arts. 7145, 7243, and art. 7150, as amended by Acts 40th Leg. (1927) 1st Called Sess. c. 81.**

Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of goods stored, *held* not invalid under Const. art. 1, § 28, as delegating to county assessor right to suspend provisions of statute, since it is assessor's duty, under article 7145 and article 7150, as amended by Acts 40th Leg. (1927) 1st Called Sess. c. 81, to require list to be furnished, notwithstanding provision that it shall be furnished "upon demand" of assessor.

**22. Statutes ⊜⇒173—Statute cannot be repealed by nonuser, in absence of irreconcilable statutes, opposite legislative policy, or elimination of object of statute.**

Statute cannot be repealed by nonuser, unless such nonuser be accompanied by enactment of irreconcilable statutes or by establishment of opposite legislative policy, or unless circumstances have so changed that object of statute has vanished or reason ceased.

**23. Taxation ⊜⇒336(1)—In statute requiring warehousemen to furnish assessor list of property stored, words "January 1st of each year" refer to time property is stored, and not time for demand for list (Rev. St. 1925, arts. 11, 7243).**

In Rev. St. 1925, art. 7243, requiring warehousemen to furnish tax assessor with list of property stored and names of owners of such property and their residences, words "January 1st of each year" refer to storage of property, and not to time of furnishing list, coma between "property is so stored" and "on January 1st of each year" being omitted under article 11, providing that punctuation of law shall not control legislative intent.

**24. Taxation ⊜⇒336(1)—Warehouseman cannot furnish tax assessor books and records instead of list of property stored required by statute (Rev. St. 1925, art. 7243).**

In suit by tax assessor to require warehouseman to furnish list of property stored and names of owners and their addresses, under Rev. St. 1925, art. 7243, warehouseman *held* not authorized to furnish books and records containing information required to be furnished instead of furnishing list.

**25. Appeal and error ⊜⇒1073(1)—Holding that warehouseman might furnish books and records to assessor instead of list of property stored, required by statute, though erroneous, held harmless, since not obligatory (Rev. St. 1925, art. 7243).**

In suit by tax assessor to require warehouseman to furnish list of property stored and names of owners and their addresses, under Rev. St. 1925, art. 7243, holding that warehouseman might furnish books and records in-

---

stead of list though erroneous, *held* not prejudicial, since it was not obligatory on warehouseman, but was matter of election.

**26. Taxation ⬅➡336(2)—In suit to require warehouseman to furnish assessor list of property stored, evidence that trust companies were not required to furnish similar list held inadmissible (Rev. St. 1925, art. 7243).**

In suit by tax assessor to require warehouseman to furnish list of property stored and names of owners and their addresses, under Rev. St, 1925, art. 7243, evidence that trust companies were not required to furnish list of property in their safety deposit boxes belonging to others *held* properly excluded, since no law requires them to furnish such list, and, if such law existed, officer's failure to enforce it would not excuse defendant.

**27. Taxation ⬅➡336(2)—In suit to require warehouseman to comply with statute requiring it to furnish list of goods stored, evidence showing failure to enforce statute in other counties held inadmissible (Rev. St. 1925, art. 7243).**

In suit by tax assessor to require warehousemen to furnish list of property stored and names of owners and their addresses, under Rev. St. 1925, art. 7243, testimony that such law was not enforced in other counties *held* properly excluded.

**28. Taxation ⬅➡336(2)—In suit to require warehouseman to furnish assessor list of property stored, evidence of damage through disclosure of names of patrons and volume of business held inadmissible (Rev. St. 1925, art. 7243).**

In suit by tax assessor to require warehouseman to furnish list of property stored and names of owners and their addresses, under Rev. St. 1925, art. 7243, testimony that furnishing of such list would damage warehouseman by disclosing names of patrons and volume of business to competitors *held* properly excluded as irrelevant and immaterial.

Appeal from District Court, Dallas County; Joel R. Bond, Judge.

Suit by R. A. Vineyard, Tax Assessor, against the Interstate Forwarding Company. Judgment for plaintiff, and defendant appeals. Reformed in part, and affirmed.

Carden, Starling, Carden & Hemphill, of Dallas, for appellant.

Claude Pollard, Atty. Gen., Allen Clark, Asst. Atty. Gen., and Will McCraw, Dist. Atty., and Tom C. Clark, Asst. Dist. Atty., both of Dallas, for appellee.

VAUGHAN, J. This suit was instituted in the court below by appellee, R. A. Vineyard, the duly elected, qualified, and acting tax assessor of Dallas county, Tex., as such assessor for and on behalf of the county of Dallas and the state of Texas, to require the appellant, Interstate Forwarding Company, a corporation engaged in the general warehouse business, and operating, as a general warehouseman, a public warehouse or place of storage located in Dallas county, Tex., to comply with article 7243 of the 1925 Revised Civil Statutes of the state of Texas, viz. to furnish him, as the tax assessor of Dallas county, Tex., a list of all of the property stored in appellant's warehouse on January 1, 1927, together with a list of the owners of such property and their residences. Appellant answered by an exception and plea in abatement by several special exceptions in the nature of general demurrers challenging the constitutionality of said article, by general demurrer, specific denial, and by making allegations to be noted further on, upon the basis of which it charged that the law was not constitutional. There was a trial without the intervention of a jury on undisputed evidence, and judgment was rendered in favor of appellee, commanding the furnishing of such list, and making other provisions in reference to the performance of the judgment which will be developed in the discussion of the assignments covering same. This judgment is properly before us for review and revision on the following five propositions germane to the orderly disposition of this appeal, viz.: (a) The right of appellee to bring the suit in his own name on behalf of Dallas county and the state of Texas; (b) the constitutionality of said article 7243; (c) the proper construction of said article 7243; (d) whether the court erred in rendering judgment for appellee; and (e) the admissibility of certain testimony offered by appellant which was excluded. We find the following material facts to have been established:

Appellant, the Interstate Forwarding Company, is a corporation, incorporated under the laws of the state of Texas, engaged in the operation of a warehouse within the limits of Dallas county prior to and on the 1st day of January, 1927. That there was property in storage in appellant's warehouse on January 1, 1927, owned by parties other than appellant. That said warehouse company kept books of who placed property in its warehouse, and had records in its possession of the storage of property therein on January 1, 1927. That from such records a list of the property stored in its warehouse on January 1, 1927, was disclosed, and could have been made therefrom showing the property so stored, the names of the respective owners, and places of residence. That some time during the month of April, 1927, a demand was made by the tax assessor of Dallas county, acting through one of his deputies, on one W. I. Ford, president of appellant corporation, to deliver to said assessor a list of the property that was stored in appellant's warehouse on January 1, 1927, together with the names and addresses of the owners thereof. That, prior to said demand, no one of the officers of said appellant corporation had any

knowledge on the 1st day of January, 1927, that such a list would be demanded. That appellant refused to comply with the demand so made, and the list requested was not furnished. That, in addition to the general storage of property, appellant handled merchandise stored with it, for which space for storage was rented, such merchandise being placed into the space so rented, and remained in such space until removed by the owner or otherwise changed, and such condition existed on January 1, 1927. That appellant's record of property so stored or removed in special space, that is, in apartments consisting of rooms kept under lock and key, with the key in possession of the owner, did not disclose any of the particular items of merchandise so stored, or that should afterwards be removed out of such space. That appellant received for storage and conducted what is generally known as two classes of warehousing, namely, household goods and merchandise storing, but was not engaged in cold storage, same being a separate branch of the storage business. Said Ford, as to handling of household goods, testified as follows:

"Household goods are placed with us by people for future use from all over the United States, and are stored by local people desiring to make a change in their arrangements. That is briefly what the household storage is; those coming here and making their homes here, and others living here."

And, as to storage of merchandise, testified as follows:

"Then we have a class of accounts which we call 'merchandise charge' that consists of various commodities being shipped to us for reshipment. Everything that comes to us is for the purpose of reshipment. It is not a permanent location for anything. That is the nature of the business. It is a distributive arrangement. It comes to us in carload lots, and we ship at less than carload lots; all of the cars to be reconsigned from Dallas and a portion of them may go into storage for out of town orders. Carloads of merchandise arrive, and on each there are orders to ship. If not to ship immediately, to hold for future orders, and it comes and goes continuously that way, and that is the way it was on January 1, 1927. There are a few less than carload lot shipments received, and a few carload lot shipments made, but the major portion of the business is dealing with goods in carload lots from within the state and out of the state, principally out of the state, from the manufacturers and reassigning it in less than carload lots to the Dallas territory. Much of this goods is handled by local agents. What the local agent has to do with the distribution of the goods depends upon the commodity, and in some instances they have entire control; in others they can only file sales orders; and in others they can only draw on stocks when O. K.'d by the house (the owner). In other words, that orders come in to ship, and we send to the house (the owner) for an O. K. or compare it with a list that we have on file. In

other words, they are sales agents, I would say in a broad way of putting it, yet some of them have entire control over their stock."

That the merchandise and household goods so held by appellant as warehouseman on the 1st day of January, 1927, owned by others than appellant, had not been rendered for or assessed for taxation in Dallas county, Tex., for the year 1927. That appellee, in his official capacity as tax assessor of Dallas county, called upon all warehousemen doing business in Dallas county known to him to furnish a list of property on hand in their respective warehouses January 1, 1927, in the manner and form that the demand for the list was made on appellant.

[1] This suit was brought through the Attorney General of the state of Texas and the district attorney of Dallas county to enforce the observance of the following statute, viz.:

"Art. 7243. *Assessment of Property Stored.* —Any person, co-partnership, association or corporation doing business in this state as a warehouseman or operating or controlling a warehouse or place of storage, shall, upon demand of the tax assessor of the county in which said business is operated or in which property is so stored, on January 1st of each year, furnish to the said tax assessor, a list of the property so stored in such warehouse or place of storage, together with a list of the owners of such property and their residence. The term 'place of storage' as used herein shall also include all cold storage or refrigeration plants wherein goods of any nature are stored. Any person or agent or representative of such co-partnership, association, or corporation who shall fail to furnish such list and information as set forth above upon demand by the tax assessor of the county in which such property is located, shall be subject to all the penalties now existing against any person for making a false rendition of property for the purpose of taxation."

Appellant sought to abate said suit on the grounds that appellee had no authority in law to file and maintain such suit, but, to the contrary, that same should have been brought in the name of the state of Texas. This plea was overruled by the court. Was this error? We think not. Appellee, under the law governing the rendition and assessment of property for taxes, was required to act in his official capacity as tax assessor for and in behalf of the state of Texas and of the county of Dallas, and, as the law had not designated any other agency or means by which the provisions of the law governing the rendition and assessment of property should be enforced, it should be held that that right rested with appellee in his official capacity, to the end that the duties of his office should be discharged in the manner and form required by law. Had the suit been brought in the name of the state of Texas, same would have been in strict conformity with the letter of article 4669, Revised Civil Statutes 1925, the effect of which will later

on be discussed. However, this should furnish no reason why the observance of the spirit of the law, as in the case before us, should not prevail, unless more regard is to be given to the shadow than to the substance of the law. The authority conferred by said article 4669 on the state, at the instance of the Attorney General, district or county attorney, to invoke the remedy of injunction to prevent the violation of a revenue law of the state, we think but a legislative declaration of the inherent right in that respect theretofore existing, not only in the state, but in a political subdivision thereof, acting by and through an officer charged with the duty of enforcing any of the revenue measures of the state, and that said article 4669 is but cumulative in designating the agencies of the state at whose instance that right could be asserted. Therefore, we are of the opinion that the provisions of said article 4669 should not be given that effect which would forbid appellee, as the officer representing the state of Texas and county of Dallas, in the very matter sought to be accomplished by the suit, from instituting the same in his name and official capacity for and in behalf of the state of Texas and Dallas county, the respective interest to be benefited by the enforcement of the provisions of the law necessary to enable appellee, as such officer, to perform his duties as such tax assessor. To so hold would be recognizing a distinction without a difference.

[2] The suit was not brought in the name of appellee as an individual, but in his official capacity, for the use and benefit of the interest represented by him as the tax assessor of Dallas county. Said article 7243 not only gives the right, but we think makes it the duty, of a tax assessor, to demand of any person in charge of a warehouse a list of the property stored in such warehouse, together with a list of the names of the owners of such property and their residences. In the making of this demand and instituting legal proceedings to enforce, an observance of same was the discharge of a governmental duty by the duly elected and acting agent of the state of Texas and the county of Dallas. Certainly the official authority of appellee cannot logically be held to have terminated on the making of and the refusal to comply with the demand, leaving appellee without any authority in his official capacity to call to his aid the power of the courts to enforce the law, the observance of which was essential for the performance of the official duties that appellee, as tax assessor of Dallas county, was under legal obligation to perform. We are of the opinion that the official duties required by law to be performed by appellee governing the rendition and assessment of property for taxes impliedly conferred on appellee, as the tax assessor of Dallas county, the authority to compel the observance of said article 7243.

In the case of Uhr v. Brown (Tex. Civ. App.) 191 S. W. 379, it is expressly held that an officer of the state has a right to institute such proceedings as are necessary to secure the performance of his duties. In that case the court used the following language:

"It is, of course, well established that a public officer, in the absence of a prohibition, has the implied authority to institute suits necessary to the proper and faithful performance of his duties."

[3] This is but in keeping with the familiar rule of statutory construction that, whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. In other words, that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the objects of the grant. There can be no question but that said article 7243 granted to appellee, as tax assessor of Dallas county, the power to demand of appellant that it furnish a list of the property stored in the warehouse conducted by it on the 1st day of January, 1927, together with a list of the names of the owners of such property and their respective residences. This, as an express power, certainly carried with it by necessary implication, in order to keep the act itself from becoming a dead letter, the right to exercise every other power necessary and proper to the execution of the power thus expressly granted. Lewis' Sutherland, Statutory Construction (2d Ed.) p. 942.

[4] Applying this rule to the statute in question, we are authorized to hold that, inasmuch as same conferred on appellee, in his official capacity, the power to call for and receive a list of the property stored in appellant's warehouse on the 1st day of January, 1927, it must follow that, on refusal to comply with such demand, appellee had the right, in his official capacity, to compel compliance with said request in a court of competent jurisdiction. That said article 7243 is a remedial statute, we have no doubt, as the Legislature, in passing same, evidently had in view the object of assessing property for taxes which the Legislature knew had not in the main been reached for taxation; in other words, was passed to prevent fraud from being perpetrated in the rendition of property whereby property subject to be taxed should not escape proper rendition and assessment, and therefore must be considered as enacted for the public good to suppress a public wrong. It may be further observed that article 7243, supra, was enacted for the purpose of more clearly carrying out the provision of our state Constitution requiring equality and uniformity of taxation, to the end that all property within the state should bear its just proportion of the burdens of government by contributing, through the means of taxation,

to the revenue necessary for the support of the state institutions. Therefore, as a remedial statute, a liberal and comprehensive construction to accomplish its purpose should be indulged in, as such a construction will do no actual violence to its terms, but, to the contrary, will be in harmony with the purpose for which it was enacted, as revealed by its plain provisions. Lewis' Sutherland, Statutory Construction (2d Ed.) p. 1244; Taylor v. Iowa Park & Gin Co. (Tex. Civ. App.) 199 S. W. 853.

As an officer in the state, appellee, as tax assessor of Dallas county, was required to and did take oath that he would faithfully and impartially discharge and perform all the duties incumbent upon him as tax assessor of Dallas county, Tex., according to the best of his skill and ability, agreeable to the Constitution and laws of the United States and of this state, as prescribed by article 16, § 1, of the Constitution of the state of Texas, and executed an official bond before entering upon the duties of his office, conditioned that he would faithfully discharge all the duties of said office, and by articles 7178 and 7214, Revised Civil Statutes 1925, was required to take, and did take, the following oath, in addition to the oath prescribed by the Constitution of this state, viz.:

"That I will personally view and inspect all the real estate and improvements thereon subject to taxation lying in said county that may be rendered to me for taxation by any corporation or individual, or by their agent or representative, as fully as may be practicable and that I will as fully as is practicable view and inspect all other taxable property in said county rendered to me as aforesaid. That I will to the best of my ability make a true estimate of the cash value, the market value of such property, if such property has a market value, and, if it has no market value, then the real value, of all such property, both real and personal on the 1st day of January next preceding, and that I will make up and attach to each assessment sheet, made up and sworn to by the said property owners, their agents or representatives, a true assessment and valuation of said property, together with a memo of all facts which I may learn bearing upon the value of said taxable property, and that I will make all possible inquiry relative to the true value of such property, and that I will attach said memo and statement of facts, that I may ascertain as aforesaid, to the said assessment sheets of the respective property owners."

And by article 7222, Id., every assessor is required, "on or before the first day of August of each year for which the assessment is made, return his rolls or assessment books of the taxable property rendered to him or listed by him for that year, * * * to the county board of equalization, verified by his affidavit, * * * that the rolls (or books) * * * contain a correct and full list of the real and personal property subject to taxation," so far as he has been able to ascertain same. Thus each tax assessor is required to swear that he has complied with every requirement of the law relating to the rendition and assessment of property for taxation.

[5] The provisions of our tax law, which authorize a suit to be brought, do not refer to suits to compel the rendition of property, but to the filing of suits for the recovery of money legally due for taxes. The institution of such suits must be done on an order of the commissioners' court, as provided in article 7297, Revised Civil Statutes 1925. This suit, however, was brought for the purpose of requiring appellant, who had in its possession property of others, to furnish to appellee, as the tax assessor of Dallas county, a list of such property, as provided for by said article 7243. We are therefore of the opinion that there was no necessity for the commissioners' court of Dallas county to have entered an order authorizing the institution of this suit as such perequisite, for the institution of same has no existence within the law, and, further, that the proper construction of said article 7243 authorized by implication the bringing of the suit by appellee as tax assessor of Dallas county for and on behalf of the state of Texas and Dallas county. However, in order to maintain the suit as brought, it is not necessary to rest the right of appellee to so institute same upon authority implied by said article 7243, but may be bottomed upon the following articles of Revised Civil Statutes 1925, viz.:

"Art. 4669. The full right, power and remedy of injunction may be invoked by the state at the instance of the county or district attorney or Attorney General, to prevent, prohibit or restrain the violation of any revenue law of the state.

"Art. 4670. The procedure in any suit under this subdivision shall be the same as near as may be as in other suits for injunction."

The suit was brought at the instance of the Attorney General of the state of Texas and the district attorney of Dallas county, Tex., to restrain the violation of a revenue law of the state; it is true, not in the name of the state of Texas as plaintiff, but by and in the name of an officer charged with the performance of certain duties having to do with the enforcement of the revenue laws of said state, viz. the rendition and assessment of property for taxation for and on behalf of said state and county to enforce, through injunction, the observance by appellant of said article 7243. This was in effect the invoking by the state of Texas of the remedy through injunction to prevent the violation of one of its revenue laws; therefore, the suit as brought was authorized by, and in conformity with the terms and provisions of, said articles 4669 and 4670. We therefore over-

rule appellant's assignment of error and propositions thereunder based on the overruling of its plea in abatement.

[6, 7] It is insisted by appellant that article 7243 is so arbitrary, unreasonable, and so unnecessarily imposes a burden on a certain class of people as to be violative of section 3 of article 1 of the Constitution of the state of Texas. This is based upon the proposition that said statute places warehousemen in a different classification from banks and trust companies and other persons who might have in their custody property belonging to another. The classification made is, in our opinion, a legislative function, and should not be set aside by the courts, unless the basis is purely arbitrary. It must be apparent that there is a well-defined distinction between the kind, character, and size of property which is stored in warehouses and the kind, character, and size of property placed in safety deposit boxes of banks and trust companies. This being true, it logically follows, that the basis adopted by the classification in the above article is not unreasonable or arbitrary, and should not be disturbed. Sid Westheimer Co. v. Piner (Tex. Civ. App.) 240 S. W. 985. Said statute does not impose a special privilege upon others than appellant, viz.: other bailees of property in the state of Texas not included in such article, or imposed upon appellant the duty of furnishing the information mentioned in such statute, whereas no such duty is imposed upon other bailees of property of like character in this state. In the following cases, it has been held that the Legislature may classify persons, organizations, or corporations according to their business, and may apply different rules to those which belong to a different class. Supreme Lodge U. B. A. v. Johnson, 98 Tex. 5, 81 S. W. 18; Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; Marchant v. Ry. Co., 153 U. S. 387, 14 S. Ct. 894, 38 L. Ed. 751; Green v. State, 49 Tex. Cr. R. 380, 92 S. W 847; Smith v. State, 54 Tex. Cr. R. 298, 113 S. W. 289; Fidelity, Mut. L. Ins. Co. v. Mettler, 185 U. S. 325, 22 S. Ct. 662, 46 L. Ed. 922. The classification made by the Legislature in reference to warehousemen as contradistinguished from that class of business engaged in by banks and trust companies was not an invidious or arbitrary distinction, but one resting in the difference that exists in the character of the business conducted by such other bailees, which was but a just recognition of the existence of a difference in the class of the business so engaged in, and it was within the province of the Legislature to apply different rules in recognition of such difference, and therefore a proper classification within the provisions of section 3, art. 1, of the Constitution of Texas. The fact that the Legislature did not see fit to pass a law similar

to article 7243, which would require all bailees of all character of personal property in this state, other than warehouses, to furnish a list of property stored with them, should not render article 7243 void and ineffective. This, because it is not humanly possible for the Legislature to perfectly and entirely cover any one field of needed legislation in one enactment or at one particular session of that body. This is but in keeping with the holding of the Supreme Court of the United Sattes in the case of Ozan Lumber Co. v. Union County Nat. Bank, 207 U. S. 251, 28 S. Ct. 89, 52 L. Ed. 195, viz.:

"It is almost impossible, in some matters, to foresee and provide for every imaginable and exceptional case, and a Legislature ought not to be required to do so at the risk of having its legislation declared void, although appropriate and proper upon the general subject upon which such legislation is to act, so long as there is no substantial and fair ground to say that the statute makes an unreasonable and unfounded general classification, and thereby denies to any person the equal protection of the laws. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. See Gulf, etc., Co. v. Ellis, 165 U. S. 150 [17 S. Ct. 255, 41 L. Ed. 666] and cases cited; Mo., etc., Co. v. May, 194 U. S. 267 [24 S. Ct. 638, 48 L. Ed. 971]."

That the classification in the statute under investigation was for governmental purposes, viz. for the assessment of taxes to enable the state to raise its revenue, there can be no question, and is undoubtedly an appropriate and proper act upon the subject of revenue, and is barren, in our judgment, of any "substantial and fair ground to say that the statute makes an unreasonable and unfounded general classification." We therefore overrule appellant's assignments of error challenging the constitutionality of said act on this ground.

[8] We are next brought to consider the assignments urged by appellant to the effect that, if said article 7243 is construed so as to authorize a tax assessor to bring suit to compel a person in charge of a warehouse to furnish the list mentioned in said article, it would violate the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall make or enforce any law which abridges the privileges and immunities of citizens of the United States. It is true this statute will subject certain classes of persons to litigation on a refusal to comply with its terms. Does this amount to a violation of the above constitutional provision? We think not. This is but giving a new right of action in favor of the state or in its behalf against certain classes of persons who may refuse to comply with the provisions of said article 7243 for the purpose of preserving and enforcing the provisions of a

revenue measure which does not abridge any privilege or immunity secured under the law to a citizen of the United States. Appellant is not privileged to violate a plain provision of a revenue statute, and is not immune, in the event of a violation of it, from a suit to compel its observance. While not involving a similar state of facts to the instant case, yet, on principle the holding in the case of Simmons v. Western Union Tel. Co., 63 S. C. 425, 41 S. E. 521, 57 L. R. A. 607, is in support of this holding. United States v. Stowell, 133 U. S. p. 1, 10 S. Ct. 244, 33 L. Ed. 555, the rule was announced:.

"By the now settled doctrine of this court (notwithstanding the opposing dictum of Mr. Justice McLean in U. S. v. 84 Cases of Sugar, 32 U. S. (7 Pet.) 453, 462, 463 [8 L. Ed. 745]) statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant, but they are to be fairly and reasonably construed, so as to carry out the intention of the Legislature."

[9] We therefore hold that, the act in question being a revenue measure, such construction should be indulged in, and legal effect accorded that will carry out the legislative intent.

[10] We are further of the opinion that the provisions of said article 7243, requiring appellant to furnish the list of property, name of owner, and residence, as therein provided for, does not deny to appellant the equal protection of the law secured by the Fourteenth Amendment to our Federal Constitution, and, further, that want of due process of law cannot be urged against this suit on the proposition that no compensation is provided for the time required, trouble that may be experienced, and expenses incurred in making out the list provided for, and required to be furnished by, said article. Consolidated Rendering Co. v. State of Vermont, 207 U. S. 541, 28 S. Ct. 178, 52 L. Ed. 327, 12 Ann. Cas. 658.

[11-14] The further contention is made by appellant that article 7243 violates section 17, art. 1, Constitution of Texas, in that it seeks to take its property and apply the same to public use without adequate compensation, and contravenes section 9 of article 1 of said Constitution, in that it contemplates an unreasonable seizure and search of the papers in possession of appellant. Appellant is a public warehouseman within the meaning of article 5568, Revised Civil Statutes of Texas, and, under the law creating and governing such warehousemen, viz. chapter 2, title 93, Revised Civil Statutes of Texas, enjoys a valuable franchise which should be more than compensation for the services required of it under the tax measure assailed. The

rights and privileges thus secured to appellant as a warehouseman certainly carry the corresponding duty to render the public service required of it as warehouseman by article 7243, supra. Appellant would repudiate the burdens of the law and retain all of its benefits, when the rule is that, where the law confers a valuable right upon and to be enjoyed by the people generally at their own election for private gain or personal pleasure, the provisions of the law that require of those enjoying its benefits the performance of a reasonable public service growing out of and incident to the exercise of the rights conferred are as valid as the provisions of the law creating and conferring the valuable right. The law relating to public warehousemen is a valid constitutional measure. Article 8, § 1, of our state Constitution, in part reads:

"Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

And article 8, § 17, Id., provides:

"The specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require other subjects or objects to be taxed in such manner as may be, consistent with the principles of taxation fixed in this Constitution."

[15] Article 7243, supra, was certainly authorized by the quoted provisions of article 8, § 17, as being a provision for the assessment of property subject to taxation under article 8, § 1, supra, or as to other property the Legislature had required to be taxed under article 8, § 17, supra. Both the public warehouseman statute and said article 7243 being valid, the requirement made of warehousemen to furnish the list within the terms of the requirement of said article 7243 is not an unreasonable seizure and search of the papers in possession of appellant. Appellant has no interest in the property to be included in the list demanded or liable in any respect for the payment of taxes for which such property may be subject. Its position is simply that of holding possession of property owned by others than appellee, as the assessor of property for taxation, is attempting to discover for the purpose of requiring a proper rendition for taxation to be made. Therefore there is nothing unreasonable in the proceedings instituted to secure the rendition of such property for taxation. However, the law assailed being a revenue regulation that the Legislature under the Constitution of this state had the authority to enact and saw fit to enact, courts are not at liberty to gainsay the enforcement of that measure on the ground of the unreasonableness of same. In re Mea-

dor, 16 Fed. Cas. 1294; In re Strouse, 23 Fed. Cas. 261; Cooley's Const. Lim. (6th Ed.) p. 367, note 2. In the case of Co-operative, etc., Ass'n v. State, 156 Ind. 468, 60 N. E. 148, it was held, and we think properly so:

"In the provisions made by the Legislature for searching for property omitted from taxation there is nothing unreasonable. If the omission is accidental, the owner ought not to complain; and if intentional, he ought not to be heard, except as to the truth of the supposed discoveries."

Taxation cannot be just, equal, and uniform, unless all property within the state subject to taxation be made to bear its just proportion of the burdens of government, and it is apparent that the Legislature, in enacting article 7243, supra, was moved by the knowledge that property subject to taxation in this state had escaped its just burden by being covered up from the ordinary method of procedure to secure a rendition of all property within the state subject to taxation.

[16] Prior to the enactment of article 7243, it is clear from the constitutional provisions and the measures enacted by the Legislature, supra, that it was the duty of appellee, as the tax assessor of Dallas county, to secure, as far as within his power under the law, the rendition for taxation of all property within the county of Dallas subject to taxation.

We think the rule: "It is well settled that neither the provision that private property shall not be taken for public use without just compensation, * * * nor that declaring that no person shall be deprived of his property without due process of law limits the legislative power in regard to taxation," announced by Sedgwick on Con. of Stat. & Const. Law (2d Ed.) p. 425, applies with unerring precision in opposition to appellant's position, that article 7243, in so far as same requires the furnishing of the list therein provided for, is unconstitutional, on the ground that it is a taking of appellant's property for public use without just compensation, or that it is a taking of appellant's property without due process of law, as said constitutional provisions were not a limitation upon the power of the Legislature to pass said article 7243, same being a measure in regard to taxation. In line with this holding are the decisions on principal in the following cases: Hughes v. State, 67 Tex. Cr. R. 333, 149 S. W. 173; City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870; Pierce Oil Co. v. Hopkins, 264 U. S. 137, 44 S. Ct. 251, 68 L. Ed. 593.

[17] It is next insisted by appellant that the effect of said article 7243 is to curtail the liberty of speech and the corresponding liberty of silence, in that it forces appellant to speak when it has, under the Constitution, a right to remain silent. We think that the discussion of the other propositions, supra, is sufficient reason for a holding adverse to appellant's contention in this respect. Appellant relies upon the case of St. Louis, S. W. R. R. Co. v. Griffin, 106 Tex. 477, 171 S. W. 703, L. R. A. 1917B, 1108, as sustaining its position. In that case, a statute was under investigation that required a corporation, upon discharging an employee, to give him a statement in writing of the cause of his discharge, etc. The act gave no right of action to the employee for failure to furnish the statement, but provided the state might sue and recover a penalty of $1,000 for failure to comply with the law. The Supreme Court properly held said act unconstitutional, as being violative of article 1, § 3, of the Constitution of Texas, in that the liberty to speak included the corresponding liberty or right to remain silent. A vital distinction exists between the two cases. The statute involved in the Griffin Case, supra, was designed for the protection of private rights, while the statute before us was enacted, not to protect private individuals, but for the purpose to more effectually carry out the provisions of our state Constitution and laws enacted thereunder relating to taxation, therefore, a public measure of the highest importance dealing with the revenues of the state. The opinion rendered in the case of First National Bank v. Hughes, (C. C.) 6 F. 737, on a similar question to the one under discussion, disposed of same as follows:

"Private rights must to a reasonable extent yield to the public necessities. * * * [that] No state can maintain its existence without revenue—a burden imposed by law on everyone for the benefit of all. This burden ought to be equal and uniform, and the Legislature requires the officers charged with the duty of making assessments for the purpose of taxation to enforce this just and beneficent rule and, among other powers conferred to enable them to do so, auditors are authorized to summon witnesses and examine them on oath. These enactments are reasonable, necessary, and just. The auditors, selected for their supposed intelligence and impartiality, act officially in the execution of these laws, and it is the duty of every citizen, when summoned, to respond and freely communicate all the information he may possess necessary to a full impartial assessment of property for taxation."

[18] It is further contended that said article 7243, in so far as it requires a preparation of the lists therein referred to, violates the Thirteenth Amendment to the Constitution of the United States, in that it requires appellants and others in the classes mentioned to perform involuntary servitude, to wit, the work incident to the making of the lists. This position cannot be sustained. Butler v. Perry, 240 U. S. 328, 36 S. Ct. 258, 60 L. Ed. 672. In that case the court had under consideration a similar contention as that here made, and, in disposing of same, Justice

McReynolds, in delivering the opinion for the court, used the following language:

"Utilizing the language of the ordinance of 1787, the Thirteenth Amendment declares that neither slavery nor involuntary servitude shall exist. This amendment was adopted with reference to conditions existing since the foundation of our government, and the term involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results. It introduced no novel doctrine with respect to services always treated as exceptional, and certainly was not intended to interdict enforcement of those duties which individuals owe to the state, such as services in the army, militia, on the jury," etc.

To the same effect is the holding in the case of Hodges v. U. S., 203 U. S. 1, 27 S. Ct. 6, 51 L. Ed. 65; Henley v. State, 98 Tenn. 665, 41 S. W. 352, 1104, 39 L. R. A. 126; 12 Corpus Juris, p. 938.

[19, 20] This being a revenue measure, its enactment rested within the sound discretion of the Legislature. We do not think that there is any inconsistency between the laws found in title 93, relating to public warehousemen, and article 7243. Certainly said measures are not in conflict or contradictory; one deals with the right to pursue the business of a public warehouseman, which rights has no relation to, and do not depend for the exercise thereof on, the existence of any provision contained in said article 7243, or any other tax measure.

[21] It is earnestly insisted by appellant that said article 7243 is unconstitutional, in that it delegates to the tax assessors of the several respective counties of Texas the right to suspend the provisions of said statute for whatever persons, firms, or corporations mentioned therein, if such assessor so elect, contrary to article 1, § 28, Constitution of Texas, which provides that "no power of suspending laws in this state shall be exercised except by the Legislature." This contention is based upon the following language of said article 7243, viz.: "Shall, upon demand of the tax assessor of the county," it being insisted that the words "upon demand" do not make it obligatory upon the tax assessor to call for the list provided for in said article, but leaves to the will of the tax assessor whether or not said demand shall be made; that, therefore, the effect of the above-quoted provision is to confer upon tax assessors the power to suspend the enforcement of said law. It is clear that, under the provisions of this article, it is one of the official duties of tax assessors to comply with same as one of the laws prescribing duties to be performed for the purpose of assessing property for taxation. Under the law, as same existed before the passing of said article 7243, the duty rested upon appellee, as the tax assessor of Dallas county, to secure a proper rendition of all property in Dallas county

subject to taxation. Article 7145, Id., provides:

"All property, real, personal, or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed."

[22] The property sought to be reached by the list provided for under article 7243 is not expressly exempted from taxation under the laws of this state. See article 7150, Id., as amended by First Called Session Fortieth Legislature, p. 224. In a most careful analysis of the effect of the provisions of said article 7243, we have not been able to discover wherein the provisions objected to, as being in contravention to article 1, § 28, supra, are in conflict with said constitutional provision. To our public officers is committed the duty of enforcing our laws as same may relate to the particular office to which one has been elected. The duties to be discharged by an officer are the measures prescribed by the lawmaking power for the purpose of accomplishing the object for which the particular office was created. In its last analysis, appellant's position is that, if an officer charged with the enforcement of a particular law fails to enforce that law against all persons required to observe the provisions of same, the officer has thereby suspended the law. To this position we cannot assent. The duty rests upon the citizenship to observe the plain mandates of the law as much so as it rests upon an officer charged with the enforcement of its terms and provisions to discharge that duty, and the validity of a statute cannot thus be impaired, but only its enforcement interfered with. In other words, the law remains in full force and effect, although, so to speak, in a state of hibernation, because of nonenforcement. This is in keeping with the following rules of statutory construction:

"A statute cannot be repealed by nonuser unless such nonuser be accompanied by the enactment of irreconcilable statutes, or by the establishment of an opposite legislative policy, or unless circumstances have so changed that the object of the statute has vanished or its reason ceased." 36 Cyc. p. 1085, par. F. and decisions cited in support of same.

[23] Appellant contends that "January 1st of each year," as used in article 7243, refers to the time when the list mentioned in said article must be demanded by the tax assessor. Appellee contends, to the contrary, that said words refer to the storage of property, and not to the time of furnishing the list. What was the purpose intended to be accomplished by the enforcement of the provisions of said article 7243? Certainly not merely demanding the list therein provided for on any particular date, but to the accomplishment of a substantial purpose, viz.: To secure as near as may be a full and com-

plete rendition of property within the state subject to taxation. To follow the interpretation insisted upon by appellant would be but to destroy the purpose for which the Legislature enacted this measure; its purpose being clearly shown by the emergency clause forming a part of said article 7243, viz.:

"The importance of this legislation and the fact that at the present time there are large warehouses operating in the state of Texas containing property which cannot be assessed for taxation because the persons in charge * * * refuse to divulge the names of the owners of such property, creates an emergency. * * *".

This, we think, demonstrates clearly that article 7243 was enacted for the purpose of enabling tax assessors of the respective counties to secure a more complete rendition of all taxable property, and should be construed as cumulative to all other laws for the assessment of taxes, and, further, that the law was not designed to hinder or prevent a tax assessor from securing a list of the property mentioned in said article, unless demand therefor was made on "January 1st." The construction contended for by appellant would be in violation of the plain terms of article 11, Revised Statutes 1925, viz.:

"Grammatical errors shall not vitiate a law, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands. In no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment thereof."

Applying this rule of statutory construction to article 7243, the comma which occurs between the word "stored" and "January 1st of each year" may be omitted and should properly be omitted, and the statute then reads "in which property is so stored on January 1st of each year."

The intention of the Legislature, as gathered from said article 7243, supra, was to aid tax assessors in the discharge of their respective duties to more perfectly obtain the rendition of all property in the state subject to taxation, especially property subject to taxation on storage in warehouses operating in the state of Texas.

Having regard for the language used, and applying that rule of construction which will ascertain and give effect to the purpose and intent of the Legislature in passing the act under investigation, we hold that the date "January 1st of each year" refers to the time when the property is stored in the warehouse, and not to the time demand must be made for the list. Spears v. City of San Antonio, 110 Tex. 618, 223 S. W. 166; Texas & Pacific Ry. Co. v. Taylor, 54 Tex. Civ. App. 419, 118 S. W. 1097; Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070; Waters Pierce Oil Co. v. State, 48 Tex. Cr. App. 162; 106 S. W. 918.

[24, 25] Appellant complains of the action of the court in providing in its judgment that the appellant, if it desired to do so, might furnish its books and records which contain the information required to be furnished by article 7243 instead of furnishing the list provided for by said article which would have to be prepared from the records and books of appellant. The judgment in this respect was not authorized by the law, and the court erred in so decreeing. This, however, is not material error of which appellant can complain, not being obligatory on appellant, but a matter of election as to whether it would furnish the list, as required by said article 7243, or its books and records from which the information required to be furnished could be obtained. The judgment in this respect will be reformed, so that appellant will be required to furnish to appellee a list of the property stored in its warehouse on January 1, 1927, together with a list of the owners of such property and their residences.

[26] Appellant predicates error upon the action of the court in sustaining appellee's objections to certain questions by which appellant sought to prove that banks and other trust companies were not required to furnish, and did not furnish, under the law a list of the property in their safety deposit boxes belonging to other persons. We have no law in Texas requiring banks or trust companies to furnish a list of the persons who have property in the safety deposit boxes of banks or trust companies to the tax assessors of this state. Even if there had been such a law, the failure on the part of an officer charged with the enforcement of same to discharge his duty in that respect could furnish no reason why appellant should be excused from complying with the provisions of said section 7243. This being true, it follows that whether banks or trust companies have or have not been furnishing lists is immaterial —a condition that could not concern appellant, whose duty was fixed by statute, and who had failed and refused to comply therewith. The evidence offered was immaterial; therefore the act of the court in excluding same cannot form the basis of a valid assignment of error. Kirby Lumber Co. v. Chambers, 41 Tex. Civ. App. 632, 95 S. W. 607; Alexander v. McGaffey, 39 Tex. Civ. App. 8, 88 S. W. 462; Texarkana, Ft. Smith Ry. Co. v. Terrell (Tex. Civ. App.) 172 S. W. 742.

[27] Appellant presents as error the sustaining of appellee's objection to testimony offered by appellant to the effect that the law sought to be enforced against it was not enforced in other counties of this state. We are unable to appreciate any merit in this objection, for, so long as the law remains to be enforced, the failure of an officer charged with that duty could not have the effect to prevent the proper enforcement of same, but only in a proper case, viz. where it was an in-

tentional violation of duty would subject such officer to removal from office and perhaps suit on his official bond. The only way of destroying a valid law is by an act of the Legislature repealing, modifying, or changing same. Conceding that the statute under investigation had not been enforced in some parts of the state, that fact could not exempt appellant from the operation of its provisions when sought to be enforced by proper authorities in Dallas county, Tex. Therefore the court did not err in rejecting the testimony so offered. Ga. R. R. & Banking Co. v. Walker, 87 Ga. 204, 13 S. E. 511.

[28] Appellant proffered testimony to the effect that to require it to furnish the list as provided for by article 7243 would disclose to its competitors the names of its patrons, the volume of its business, and subject the owners of property stored with it to annoyance and inconvenience, and would result in the loss of a large volume of its business, and impair the good will which it had spent many years in establishing. Appellee objected to the introduction of this evidence on the ground that same was irrelevant and immaterial, which was sustained by the court. In this the court did not err. First National Bank v. Hughes, supra. In that case the bank disputed the right to compel the production of its books, first, because, under the provisions of the United States Revised Statutes (Rev. St. § 5241 [12 USCA 165]), it should not be subject to any visitorial power other than such authorized by this statute, but it was held that the inspection of its books, for the purpose of assessing its deposits, was not the exercise of a visitorial power within the meaning of this statute; second, because the enforced exhibition of its books would expose its business, lessen public confidence, and diminish its deposits and consequent profits. The court, however, held that, even if this were true, the state might still be entitled to the testimony demanded. In the case of Taylor v. United States, 3 How. 210, 11 L. Ed. 559, which involved the construction and enforcement of a revenue measure, Mr. Justice Story, delivering the opinion, used the following language:

"It is in this light I view the revenue laws, and I would construe them so as most effectually to accomplish the intention of the Legislature in passing them."

We therefore hold that the objection urged to the introduction of this evidence was well taken.

All other assignments and propositions thereunder not discussed have been carefully reviewed, and, not finding any reversible error disclosed by the record, the judgment of the lower court, as herein reformed, is in all things affirmed.

Affirmed.